■ In the Matter of PINELAWN CEMETERY, Appellant, v LOCAL 365 CEMETERY WORKERS AND GREENS ATTENDANTS UNION et al., Respondents.—Order, Supreme Court, New York County (Francis A. Affronti, J.), entered March 6, 1991, which denied petitioner's application to stay arbitration, unanimously affirmed, without costs.

Petitioner contends that respondent Edgordo Aponte is precluded from arbitrating the legality of his discharge pursuant to a provision of the collective bargaining agreement between petitioner and respondent Local 365 which provides, "All claims of employees for back pay or otherwise shall be considered waived and discharged unless filed with the Union by the employees within 30 days of the accrual of the claim and registered by the Union with the Employer within 10 days thereafter." According to the contract, upon failure to comply with this provision the union and employer are required to refuse to entertain any claim. Respondent Aponte was discharged from petitioner's employ on February 5, 1990. On the date of his discharge, he notified his shop steward, who in turn contacted the president of respondent-union regarding Aponte's claim. Several days later, on or about February 8, 1990, the president of respondent-union contacted petitioner by phone to discuss Aponte's claim. A written demand for arbitration, however, was not forwarded to petitioner until on or about March 22, 1990, beyond the 40-day period allowed under the collective bargaining agreement.

The matter was set down for preliminary trial to determine whether, as alleged by petitioner, the registration of Aponte's claim was required to be made in writing or, as contended by the respondent-union, such registration was complied with upon the union's oral notification to petitioner of Aponte's claim. At the trial, petitioner's representative, while initially testifying that in past practice registration was completed by the service of a demand for arbitration, subsequently admitted that the purpose of the registration clause was to give the employer notice and an opportunity to settle the matter before it proceeded to arbitration. He also admitted, with respect to past claims, that it was the practice of the parties, as testified to by the union president, to discuss potential grievances by phone to arrange a meeting for purposes of settlement, and that it was after no settlement could be arrived at during the course of such meetings that a demand for arbitration would follow.

The collective bargaining agreement contains no provisions setting forth the means by which the registration requirement

may be complied with, and no provision which requires registration to be made in writing. Thus, although the dictionary definition of the term "register" as urged by petitioner may imply some formalistic procedure or writing, that does not eliminate all ambiguity with respect to the term as used between the parties in this case. As stated by the Court of Appeals in *Sutton v East Riv. Sav. Bank* (55 NY2d 550, 555), "lest form swallow substance, our goal must be to accord the words of the contract their 'fair and reasonable meaning' ". Put another way, a "determination of the meaning of the language used by the parties should be based on the basic purpose underlying the contract and should not be foreclosed by a rigid or formalistic reading without regard to the realities of the situation." *(T.I.P. Holding No. 2 Corp. v Wicks,* 63 AD2d 263, 269.) Thus, in light of the purpose of the collective bargaining agreement, and the testimony of the parties at the preliminary trial, we agree with the trial court's determination that in this case, the terms of the parties' agreement have been substantially complied with. Concur—Sullivan, J. P., Milonas, Asch, Kassal and Smith, JJ.